[No. D041925. Fourth Dist., Div. One. Apr. 2, 2004.]

MARJORIE SHUER, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO, Defendant and Respondent.

478

COUNSEL

Joel C. Golden for Plaintiff and Appellant.

Catherine I. Hanson and Astrid G. Meghrigian for California Medical Association as Amicus Curiae on behalf of Plaintiff and Appellant.

John J. Sansone, County Counsel, and English R. Bryant, Deputy County Counsel, for Defendant and Respondent.

Opinion

**BENKE, Acting P. J.**—Plaintiff and appellant Dr. Marjorie Shuer sued defendant and respondent County of San Diego (county) for wrongful termination from her position as a supervising psychiatrist. County demurred, arguing Shuer had failed to exhaust administrative remedies. The demurrer was granted. Shuer's case was dismissed. She appeals.

## BACKGROUND

### A. *Complaint*

#### 1. *Termination*

In a first amended complaint Shuer, representing herself, alleged causes of action for wrongful termination in violation of Business and Professions Code Section 2056, subdivision (c), and unlawful retaliation in violation of Labor Code section 1102.5, subdivision (b). Business and Professions Code section 2056, subdivision (c) states that the termination of a physician for advocating for medically appropriate health care violates public policy. Labor Code section 1102.5, subdivision (b) makes it unlawful for an employer to retaliate against an employee for disclosing information to a government agency when the employee reasonably believes the information discloses a violation of law.

The complaint alleged that in November 2000, Shuer, a licensed psychiatrist, began working on a probationary basis for the County Health and Human Services Agency as a supervising psychiatrist in the Juvenile Forensic Services Facility (JFSF). Her duties included the supervision of psychiatrists and other medical staff and the clinical assessment and treatment of minors in juvenile hall.

During that employment, Shuer concluded that in large measure the community standard of care was not practiced at JFSF. Shuer believed medical employees at the facility engaged in unethical, negligent and unlawful practices. The complaint listed seven examples of such practices. They included the frequent failure of physicians to obtain informed consent before prescribing psychotropic medication, the failure to conduct "good faith examinations" before prescribing potentially dangerous medication and treatment, and failure to perform or properly interpret diagnostic tests. The examples included the prescribing of inappropriate medication, the failure to further treat patients after assuming responsibility for their care and the altering of medical records and consent forms. Finally, the complaint alleged that physicians submitted false time reporting forms for hours worked.

Shuer alleged she brought these matters to the attention of the psychiatrists she supervised. Her directives to correct the problems were ignored. Shuer

also brought her concerns to the attention of her own supervisors. Again the matters were ignored. In light of this failure to take action, Shuer brought the cited practices to the attention of county counsel.

Shuer's employment with county was terminated on July 24, 2001. The cited basis for termination was the failure to satisfactorily complete the duties of her position. Shuer alleged the actual reason for her termination was retaliation for her refusal to participate in, and her efforts to correct, unethical, medically inappropriate and illegal practices in JFSF.

### 2. *Post-termination*

The complaint alleged that with her letter of termination Shuer received a copy of rule 4.2.5 of the County of San Diego Civil Service Rules (Civil Service Rules) dealing with probationary employees. Subdivision (c) of that rule states that county shall dismiss a probationary employee who is found unsatisfactory for, or incompetent to perform, the duties of the position. The subdivision requires the dismissed employee be given a statement of the reasons for dismissal. The subdivision then states: "A probationer dismissed at any time within the probationary period shall have no right to appeal to the Commission [County of San Diego Civil Service Commission (Civil Service Commission)] in regard to his/her separation or performance appraisal. A probationer who alleges facts showing a violation of his/her liberty interest shall be entitled to a hearing in accordance with the rules . . . implemented by the Commission and/or Director." (*Ibid.*)

Shuer alleged that after receiving the termination letter, she discussed the matter of a civil service hearing with the Executive Officer of the Civil Service Commission, Larry Cook. Cook explained to Shuer that in order to have a hearing, she would have to prove that her "liberty interests" were violated. Cook explained she would have to show that she was dismissed because of her misconduct and that the misconduct was extreme, i.e., criminal. Shuer concluded that since she was not dismissed for such conduct, she was not entitled to a hearing on that basis. In any event, the hearing was described as one designed to "clear" the employee's name and would not result in reinstatement or payment of lost income.

The complaint then states: "[Cook] did mention a charge of discrimination was a possibility, but since Plaintiff was not alleging discrimination, it once again did not appear appropriate to lodge a complaint with the Civil Service Commission."

The complaint alleges Cook did not encourage Shuer to file a complaint with the commission "nor did he in any way mention that it might be

mandatory to do so if she were to file a claim." As a result of her discussion with Cook, appellant sought no administrative remedy.

Shuer alleged that she filed a timely claim with county. In denying her claim, county noted Shuer had six months in which to commence a court action but did not mention the requirement she exhaust administrative remedies before filing suit.

The complaint alleged that seeking an administrative remedy would have been futile as there is no administrative remedy available for a violation of Business and Professions Code section 2056.

In an allegation that is somewhat difficult to follow, Shuer stated that her right to due process was violated since her "abrupt termination" was an attempt to halt her appeal concerning what was apparently an earlier unfavorable performance appraisal. Shuer alleges county did not follow its rules for appealing an unfavorable evaluation. Shuer alleges her termination was a device to cut off the appeal of her performance appraisal.

### 3. Demurrer

County demurred to the complaint, arguing that Shuer failed to allege facts showing that she had exhausted available administrative remedies. Shuer, now represented by counsel, filed opposition, arguing that as a probationary employee she had no administrative remedies to exhaust. In any case, Shuer argued that county's misleading statements concerning, and failure to advise her of, any administrative remedies estopped county from asserting her failure to exhaust such remedies. Finally, she argued that any failure to exhaust any available administrative remedies was not a bar to her action since those remedies were inadequate, her right to due process was violated, and not allowing her action to proceed would be against public policy.

The trial court sustained county's demurrer without leave to amend. Shuer's action was dismissed.

## DISCUSSION

Shuer argues the trial court erred in finding that she failed to exhaust available administrative remedies before bringing her wrongful termination action and therefore erred in granting county's demurrer. She first argues that as a probationary employee she had no administrative remedies to exhaust. She contends that assuming such remedies exist, county is estopped from asserting any failure to exhaust because of the misleading and erroneous information it provided her concerning administrative remedies. Shuer argues

that in any case exhaustion was excused because any administrative remedy was inadequate, attempts to secure such remedy would have been futile, she was not provided adequate notice of such remedies and, finally, that it would violate public policy under the facts of this case to require she exhaust her administrative remedies before being allowed recourse to the courts.

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.]. Courts must also consider judicially noticed matters. [Citation.] In addition, we give the complaint a reasonable interpretation, and read it in context. [Citation.] If the trial court has sustained the demur[r]er, we determine whether the complaint states facts sufficient to state a cause of action." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

A demurrer may properly be granted based on the failure to adequately plead an exhaustion of administrative remedies. (*Kirkpatrick v. City of Oceanside* (1991) 232 Cal.App.3d 267, 277 [283 Cal.Rptr. 191].) A plaintiff must exhaust the administrative remedies available before resorting to the courts. The issue is one of jurisdiction. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942].) The exhaustion requirement applies to statutory administrative remedies and also to internal grievance procedures of public and private organizations. (*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 474–477 [131 Cal.Rptr. 90, 551 P.2d 410]; *Moreno v. Cairns* (1942) 20 Cal.2d 531, 535 [127 P.2d 914]; *City of Los Angeles v. Superior Court* (1966) 246 Cal.App.2d 73, 75–76 [54 Cal.Rptr. 442].)

Allowing the administrative agency or organization an opportunity to redress the alleged wrong without interference by the courts may make litigation unnecessary and relieve the courts of an unnecessary burden. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501 [87 Cal.Rptr.2d 702, 981 P.2d 543].) Even if the plaintiff does not obtain complete relief, there may be partial relief that reduces the likelihood and scope of litigation. (See *ibid.*) An administrative remedy ordinarily provides a more economical and less formal forum to resolve disputes and provides an opportunity to mitigate damages. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 83 [276 Cal.Rptr. 130, 801 P.2d 373].) The exhaustion requirement also promotes the development of a more complete factual record and allows the agency to apply its expertise, both of which assist later judicial review if necessary. (*Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d at p. 476.) All of these factors both promote judicial economy and afford due respect to the administrative or organizational dispute resolution process.

## A. *Available Administrative Remedies*

The first issue is whether county provided an administrative remedy to redress Shuer's claim of retaliatory dismissal from employment. County readily concedes that the rights of probationary employees like Shuer are not as extensive as those of permanent employees. For example, while permanent employees can be removed only for cause, all other persons serve and can be removed from service at the pleasure of the appointing authority. (San Diego County Charter, art. IX, § 909.1.) County argues, however, that given Shuer's claim that her dismissal was in retaliation for her refusal to condone illegal, unethical policies and actions, some harmful to patients, she had a right to an administrative review of her dismissal.

### 1. *Charter and Rules*

Article IX of the county charter creates a personnel system to recruit, select, promote and retain employees on the basis of merit. (San Diego County Charter, art. IX, § 900.) The charter states: "The County shall hire, transfer, promote, compensate, discipline and dismiss individuals on the basis of job-related qualifications, merit and equal opportunity without regard to age, color, creed, disability, national origin, political affiliation, race, religion, sex, or any other non-job-related factor." (San Diego County Charter, art. IX, § 901; Civil Service Rules, rule 6.1.1.)

The charter creates a Civil Service Commission and charges it with protecting the merit basis of county's personnel system. (San Diego County Charter, art. IX, §§ 903, 904.) The commission is the administrative appeals body for county in personnel matters authorized by the charter. It may affirm, revoke or modify any disciplinary order and may make any appropriate orders in connection with appeals under its jurisdiction. This authority applies to, among others, actions involving the disciplining of employees with permanent status and complaints of discrimination in personnel matters based on non-job-related factors. (San Diego County Charter, art. IX, §§ 904.1–904.2; Civil Service Rules, rule 6.1.1.) In resolving a matter the commission may make any necessary orders, including, but not limited to, back pay to carry out the provisions of the charter. (San Diego County Charter, art. IX, § 907.1.)

When a complaint is received claiming an employment action based on a non-job-related factor, the commission is required to refer the complaint to the Equal Opportunity Management Office (EOMO) for review and for a report to the commission. It may conduct its own concurrent investigation. The matter may be resolved by the EOMO or if a remedy is requested which is not within the jurisdiction of the EOMO, the commission may conduct a hearing on the matter (Civil Service Rules, rules 6.1.2–6.1.3.)

If the commission determines a violation of article IX, section 901, has occurred, it may make such remedial orders as necessary to correct the violation. (Civil Service Rules, rule 6.1.13.)

The charter provides for the promulgation of rules under article IX to carry out its intent. (San Diego County Charter, art. IX, § 910.) Section 910.1, states that such rules, among others, shall make provision for probationary employees. The section states: "An appointing authority has the right to dismiss a person in the Classified Service during the probationary period if the appointing authority considers the employee unsatisfactory for or incompetent to fulfill the duties of the position." (910.1, subd. (g).) The appointing authority is required to give a dismissed probationary employee a statement of reasons for such dismissal. *The probationary employee has no right to appeal.* (San Diego County Charter, art. IX, § 910.1, subd. (g).)

Civil Service Rules, rule 4.2.5, subdivision (c), requires a probationary employee be dismissed if found unsatisfactory for or incompetent to fulfill the duties of the position. The rule requires a statement of the reasons for dismissal be provided the employee. The employee is given no right of appeal to the Civil Service Commission. However, if the employee alleges that dismissal violated his or her "liberty interest," the employee is entitled to a hearing under rules and polices implemented by the commission or its director.

### 2. Analysis

No county charter provision or Civil Service Rule specifically deals with the administrative remedies available to a probationary employee who claims her dismissal was in retaliation for the disclosure of unethical or illegal conduct by county employees. As a general matter the charter and rules provide no appeal to the Civil Service Commission when a probationary employee is dismissed. There are two instances, however, in which appeals are provided for such employees.

■ If a probationary employee alleges that dismissal violated her "liberty interest," then she is entitled to a hearing under rules and polices implemented by the commission. The rules apparently do not define the non-self-explanatory term "liberty interest." The requirement for a liberty interest hearing arises when a probationary employee's termination is based on charges of misconduct that stigmatize reputation or seriously impair her opportunity to earn a living or that might seriously damage her standing or associations in the community. Under such circumstances a hearing must be afforded to allow the employee to "clear her name." (*Board of Regents v. Roth* (1972) 408 U.S. 564, 573 [33 L.Ed.2d 548, 92 S.Ct. 2701]; *Holmes v. Hallinan* (1998) 68 Cal.App.4th 1523, 1530 [81 Cal.Rptr.2d 174].)

■ Here, county cited as the reason for Shuer's dismissal her "failure to satisfactorily complete the duties of her job." While the stated reason is vague, it is not stigmatizing and is no more damaging to reputation than any dismissal based on a claimed failure to perform in a position. Such a basis for dismissal cannot require the holding of a liberty hearing. If such a reason for dismissal required such a hearing, then most dismissed probationary employees would be entitled to a "name clearing hearing." The liberty interest exception would swallow the rule that probationary employees are not entitled to a hearing following dismissal.

County relies on a second more obscure but ultimately valid basis for concluding that the charter and rules provided Shuer an administrative remedy. The charter provisions creating a personnel system have as a central goal the creation of a merit based employment structure. The charter and rules repeatedly state that all employment decisions must be made on the basis of *"job related qualifications, merit* and equal opportunity without regard to age, color, creed, disability, national origin, political affiliation, race, religion, sex, or any other *non-job-related factor."* (San Diego County Charter, art. IX, § 901, italics added; Civil Service Rules, rule 6.1.1, italics added.)

The Civil Service Commission is charged with the protection of that system. The commission's appellate authority includes appeals from actions involving not only the "discipline of classified employees with permanent status," but also "complaints of discrimination in personnel matters based on non-job-related factors." (San Diego County Charter, art. IX, § 904.2.) Nothing in the charter or rules indicate the commission may not consider claims of discrimination from probationary employees. Such a restriction would defeat the very purposes of the personnel system.

■ The crucial question is whether a complaint like Shuer's, i.e., that her dismissal was retaliatory, is a complaint of discrimination based on a non-job-related factor and, thus, cognizable by the commission. It is. In this context, the phrase "discrimination based on a non-job-related factor" means the making of an employment decision based on factors having no reasonable relationship to a person's merit or qualification for the position. A decision, therefore, to dismiss a probationary employee for revealing unethical or illegal conduct by county employees is to discriminate against her based on a non-job-related factor. (See *Sanchez v. Unemployment Ins. Appeals Bd.* (1984) 36 Cal.3d 575, 587–588 [205 Cal.Rptr. 501, 685 P.2d 61].) Shuer, therefore, was making a complaint of discrimination in a personnel matter based on non-job-related factors and the matter was cognizable by the commission.

In light of this interpretation, we conclude the charter and rules provided Shuer an administrative means to contest her dismissal.

### B. *Equitable Estoppel*

Shuer argues that because county provided her with misleading and mistaken information concerning the availability of an administrative remedy, it should be estopped from asserting her failure to exhaust such remedy. We agree.

#### 1. *Law*

At common law, estoppel was unavailable against the government. The long-established rule in this state, however, is that estoppel may be asserted against the government " 'where justice and right require it.' " (*Lentz v. McMahon* (1989) 49 Cal.3d 393, 399 [261 Cal.Rptr. 310, 777 P.2d 83].)

■ In this context a government entity will be estopped from asserting as a defense a failure to exhaust administrative remedies when a government agent has negligently or intentionally caused a party to fail to comply with a procedural precondition to recovery. (*J. H. McKnight Ranch, Inc. v. Franchise Tax Bd.* (2003) 110 Cal.App.4th 978, 990–991 [2 Cal.Rptr.3d 339]; see *Hittle v. Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 384 [216 Cal.Rptr. 733].) Equitable estoppel may be asserted when (1) the party to be estopped was apprised of the facts, (2) the party to be estopped intended that its conduct be acted upon or acted in such a manner that the party asserting the estoppel had a right to believe it was so intended, (3) the party asserting estoppel was ignorant of the true state of facts and (4) the party must have relied on the conduct to its injury. Equitable estoppel is not applied against the government when to do so would effectively nullify an important rule of policy adopted for the public benefit. (*Lentz v. McMahon, supra,* 49 Cal.3d at p. 399.)

#### 2. *Discussion*

Shuer contends she was misled by county into believing no administrative means existed to contest her dismissal. She first notes that the letter dismissing her from employment stated the action was taken pursuant to Civil Service Rules, rule 4.2.5, and that a copy of that rule was attached. The rule in relevant part states that a dismissed probationary employee has no right to appeal to the commission with regard to his or her separation unless the employee alleges a violation of her liberty interest. The nature of such liberty interest was not explained and neither the letter nor the attached rule noted any right to an appeal based on a claim of discrimination.

Two days after receiving the letter, Shuer discussed the matter of her dismissal with Cook, an agent of the Civil Service Commission. As Shuer

relates the facts in her amended complaint, Cook correctly informed her that an appeal based on the violation of her liberty interest could only be made when dismissal was for extreme misconduct. The stated reason for Shuer's dismissal was not misconduct and she correctly concluded she could not appeal to the commission on that basis.

Shuer notes Cook also stated "a charge of discrimination was a possibility." Shuer concluded, however, "since [she] was not alleging discrimination, it once again did not appear appropriate to lodge a complaint with the Civil Service Commission." Shuer states Cook did not encourage her to file a complaint nor did he tell her that doing so was a prerequisite to filing a civil action.

Shuer also notes that she later filed a claim with county concerning her dismissal. The letter rejecting that claim warned her that she had only six months to file an action. The letter did not state that it was also necessary she exhaust any administrative remedies before doing so.

It is charitable to describe Shuer's right to an administrative remedy under the facts of this case as less than clear. While county states that such a right can be found in its charter and rules, discovering it requires not merely close reading but relatively creative interpretation. The existence of Shuer's right to seek an administrative remedy for the wrong she claims is so unclear it appears, at least insofar as the facts are related in the complaint, that even the Civil Service Commission was not entirely sure it existed. We, of course, attribute no bad faith to county. We find, however, that the sum total of county's actions, as they are related in the complaint, negligently led Shuer to conclude that she had no administrative recourse. That being the case, county is estopped from asserting in its demurrer that Shuer failed to exhaust her administrative remedies.

Because we conclude equitable estoppel applies, we need not consider appellant's remaining claims.

The judgment is reversed.

O'Rourke, J., and Aaron, J., concurred.